Rena BROWN, et al., Plaintiffs,

v.

ARTERY ORGANIZATION, INC., et al., Defendants.

Civ. A. No. 86–3285.

United States District Court, District of Columbia.

July 8, 1987.

Barry Goldstein, Penda H. Hair, NAACP Legal Defense and Educational Fund, Inc., Florence Wagman Roisman, Christopher W. Hornig, National Housing Law Project, Washington, D.C., Claire McCulla, Ann C. Suhler, Richard A. Miller, Legal Services of Northern Virginia, Alexandria, Douglas L. Parker, David Alan Nall, Mercedes Marquez, Institute for Public Representation, Washington, D.C., for plaintiffs.

Daniel A. Rezneck, Peter T. Grossi, Arnold & Porter, Washington, D.C., David G. Fiske, Anthony W. Hawks, John P. Corrado, Thomas & Fiske, Alexandria, Bruce L. Downey, Thomas M. Keeling, Bishop, Liberman, Cook, Purcell & Reynolds, Washington, D.C., for defendants Artery Organization, Inc., Dominion Gardens Arlandria Ltd. Partnership, Henry H. Goldberg, Allen Geller, and Jack I. Luria (Artery defendants).

Stephen H. Sachs, Sheila C. Cheston, Roger C. Patterson, Wilmer, Cutler & Pick-

ering, Robert P. Trout, Dunnells, Duvall, Bennett & Porter Washington, D.C., for defendants Conrad Cafritz, John K. Freeman, Tigrfa, Inc., Potomac Village Ltd. Partnership, and Potomac Real Estate Group, Inc. (Bruce Street defendants).

Robert E. L. Eaton, Jr., Asst. U.S. Atty., Jonathan Strong, Patricia Sharin Flagg, Trial Attys., Office of General Counsel, U.S. Dept. of Housing and Urban Development, Washington, D.C., for Federal defendants (HUD).

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

The Artery defendants [1] have moved for a stay pending appeal of the preliminary injunction entered against them in this case on February 24, 1987, 654 F.Supp. 1106 (1987), or, alternatively, to require plaintiffs to post security and modify the preliminary injunction. Generally, the modifications sought would permit the Artery defendants to replace the boiler system (which would necessitate the vacation of the Dominion Gardens units); to repair the exterior of the buildings; to rehabilitate fully those units that are presently vacant; to relocate the tenants in Phases One and Two to available units in later phases; to install additional landscaping; to place all residents without written leases on one of the Artery defendants' standard lease forms; to raise rents periodically to market levels; and to take all steps necessary to ensure tenant compliance with the City of Alexandria housing code.

## I

### Stay Pending Appeal

■ In determining whether to grant a stay pending appeal, the Court considers factors similar to those involved in determining whether to issue a preliminary injunction: (1) whether the movant has made a strong showing that it is likely to prevail on the merits of its appeal; (2) whether movant would suffer irreparable injury if a stay is not granted; (3) whether other interested parties would suffer substantial harm if a stay is granted; and (4) whether the public interest would be served by granting a stay. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C.Cir. 1977). As when considering motions for preliminary injunctions, the Court must balance the four factors, and the necessary level of possibility of success on appeal may vary according to the Court's assessment of the other three factors. *Id.* at 843.[2]

■ The defendants contend that, by demonstrating that a serious legal question exists concerning plaintiffs' ability to prove their claim, they have necessarily made a strong showing of likelihood of success on appeal. Although the existence of a serious legal question does not necessarily amount to a strong showing that the movants are likely to prevail on the merits of their appeal, it is clear that the Artery defendants have not, in their papers, demonstrated even the existence of a serious legal question regarding plaintiffs' ability to prove their claims.

In order to demonstrate that a serious legal question exists regarding plaintiffs' ability to prove discriminatory effect, the Artery defendants are relying on a statistical analysis compiled from an unspecified questionnaire distributed to tenants of Dominion Gardens. However, this statistical analysis does not support the proposition that the defendants' "rehabilitation" efforts have not had, or will not have, discriminatory effect. Defendants' analysis is based only upon the "responding tenants" to an unspecified questionnaire; the statis-

---

1. These defendants include The Artery Organization, Inc., Dominion Gardens Arlandria Limited Partnership, Henry H. Goldberg, Alan Geller, and Jack I. Luria.

2. The Court of Appeals for this Circuit has rejected the view that a fifty percent plus probability of success on the merits is required, and adopted an analysis "under which the necessary showing on the merits is governed by the balance of equities as revealed through an examination of the other three factors." 559 F.2d at 844.

tics do not even indicate what proportion these tenants constitute with respect to the entire, responding and non-responding, tenant population. In addition, the analysis is predicated only upon the results of Phases One and Two of the rehabilitation project; it does not, and most likely cannot at this juncture, take into account the effects of the remaining phases of the rehabilitation project. While these statistics may conceivably become persuasive when considered in conjunction with whatever additional proof defendants may ultimately adduce regarding lack of discriminatory effect, they are clearly insufficient when considered alone and in the form presented, to raise a serious question regarding plaintiffs' ability to prove such effect at trial.

Defendants attempt to demonstrate the existence of a serious legal question regarding plaintiffs' ability to prove discriminatory intent by arguing that plaintiffs' allegations of such intent are speculative and rebutted by the results of Artery's relocation program. While plaintiffs' claims of discriminatory intent are supported at this time only by circumstantial evidence, the Court does not equate that evidence with mere speculation. Furthermore, the inferences that arise from that circumstantial evidence are not disspelled or dissipated by the result of Artery's relocation program. Assuming *arguendo* that the defendants did establish that their relocation program was successful, the nexus between that fact and their intent is nebulous, and it certainly does not raise a serious legal question regarding the plaintiffs' ability to prove discriminatory intent. In addition, since the fruits of Artery's relocation program were borne primarily after this litigation was instigated, the motive for establishing a successful relocation program, if only facially, may be regarded as somewhat suspect.

The Artery defendants' ability to demonstrate the existence of a serious legal question or likelihood of success on appeal becomes of even less consequence in light of the balance of the remaining three factors the Court must consider. Each of these factors strongly counsels against granting a stay pending appeal.

As the Court stated in its February 24, 1987 Opinion granting the preliminary injunction, the Artery defendants would not be irreparably injured if their rehabilitation project was temporarily halted and the status quo was preserved. It is well settled that economic loss, the sole basis for the Artery defendants' claim of irreparable injury "does not, in and of itself, constitute irreparable harm." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985). Necessarily then, the Artery defendants would not suffer any irreparable injury if a stay were not granted.

■ The plaintiffs, on the other hand, would suffer irreparable injury if a stay pending appeal were granted. The grant of such a stay would have the effect of mooting the preliminary injunction. The defendants would then be able to issue notices to vacate to the class members. Wrongful eviction, as a matter of law, constitutes irreparable injury. *See Johnson v. United States Department of Agriculture*, 734 F.2d 774, 789 (11th Cir.1984). The trial of this case is set to begin in less than two weeks. Defendants' need to do the kind of rehabilitation work they wish to do between now and then clearly is not sufficiently urgent as to require the Court to permit them to effect the wholesale eviction of the tenants they apparently contemplate. In short, the harm to the plaintiffs if the stay were granted clearly outweighs any financial loss to the Artery defendants if the stay were not granted.

The public interest also favors denial of the stay. While rehabilitation of deteriorated rental housing serves a useful public function, the public interest would be better served by remedying any possible racial injustice. *See Reynolds v. Sheet Metal Workers, Local 102*, 702 F.2d 221, 226 (D.C.Cir.1981).

In sum, considering the four factors enumerated above, it is evident that, on balance, the Artery defendants' motion for a stay pending appeal should be denied. Most of the arguments—if not all of them —are simply repetitions of points made before. They were not considered persuasive then, and they are not persuasive now.

## 1462

The grant of a stay would be contrary to the public interest, would cause irreparable harm to the plaintiffs and relatively little injury to defendants, and would not be predicated upon a strong showing of the existence of a serious legal question or a strong showing of likelihood of success on appeal.

### II

### Bond

█ The Artery defendants request that the Court impose a bond on the plaintiffs pursuant to Federal Rule of Civil Procedure 65(c). Plaintiffs are clearly financially unable to post a bond that would provide any security against the losses the Artery defendants may have suffered if an appellate court should later find that this Court erred in issuing the preliminary injunction.

Although the requirements of Rule 65(c) are phrased in mandatory terms, it is settled that the security requirement should not function to bar poor people from obtaining judicial redress. Requiring the plaintiffs to post a bond that would provide security to the Artery defendants would stifle the purpose of the Fair Housing Act since these plaintiffs would be precluded from obtaining judicial review of the Artery defendants' actions until after the irreparable injury would already have occurred, and the status quo could in all likelihood never be restored. *See Orantes–Hernandez v. Smith,* 541 F.Supp. 351 (C.D. Cal.1982); *Bartels v. Biernat,* 405 F.Supp. 1012, 1019 (E.D.Wis.1975); *Bass v. Richardson,* 338 F.Supp. 478, 490 (S.D.N.Y. 1971); *Natural Resources Defense Council, Inc. v. Morton,* 337 F.Supp. 167 (D.D.C. 1971), *aff'd on other grounds,* 458 F.2d 827 (D.C.Cir.1972). To require the plaintiffs in this case to post anything more than a nominal bond would effectively deny them the relief to which they may be entitled. Accordingly, the Court will require only the posting of a bond in the amount of $500.

### III

### Modification of the Preliminary Injunction

The defendants also seek a modification of the preliminary injunction so as to mini-mize the impact of that injunction on Artery. The modifications would permit the actual eviction of some class members and in the constructive eviction of others. Thus, if the injunction were modified in the manner requested by defendants, the remaining portion of the Court's order would be ineffective to preserve the status quo pending the outcome of the trial.

For the reasons stated above, it is this 8th day of July, 1987

ORDERED that the Artery defendants' motion for stay pending appeal, or, alternatively, to require plaintiffs to post security and modify the preliminary injunction be and it is hereby granted to the extent that plaintiffs are required to post a bond in the amount of $500; and it is futher

ORDERED that the Artery defendants' motion for stay pending appeal, or, alternatively, to require plaintiffs to post security and to modify the preliminary injunction be and it is hereby denied in all other respects.